FILED
DECEMBER 10, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN DIAGNOSTIC MEDICINE, INC., <br><br>                          Plaintiff<br><br>v.<br><br>ROBERT WALDER, PAUL KAPLAN, BRANDON WALTON, and CORE MEDICAL IMAGING LLC<br><br>                          Defendants | No. 07 C _____<br><br>**JURY DEMAND**<br><br>**07 C 6947**<br><br>**JUDGE COAR**<br>**MAGISTRATE JUDGE NOLAN** |

## COMPLAINT

Plaintiff, American Diagnostic Medicine, Inc., by and through its attorneys Clausen Miller P.C., and for its Complaint against defendants, Robert Walder, Paul Kaplan, Brandon Walton, and Core Medical Imaging LLC (collectively, "Defendants"), states as follows:

### PARTIES

1. American Diagnostic Medicine, Inc. ("ADM") is an Illinois corporation with its principal place of business in Elmhurst, Illinois. ADM is in the business of leasing medical imaging equipment to hospitals and other medical facilities and providing support technicians, including nuclear, molecular imaging technologies.

2. Robert Walder ("Walder") is a resident of California, residing at 15335 Poway Springs Court, Poway, California 92064. Walder was employed by ADM from March 2006 through October 2007, as Vice President of Sales.

3. Paul Kaplan ("Kaplan") is a resident of California, and resides at 3521 Corte Romero, Carlsbad, California 92009. Kaplan was employed by ADM from May 2006 through December 2007 as a Territory Sales Representative.

4.   Brandon Walton ("Walton") is a resident of California, and resides at 16458 Bolsa Chica St 405, Huntington Beach, California 92649. Walton is a ADM vendor for radiopharmaceuticals and other services.

5.   Upon information and belief, Core Medical Imaging ("CMI") is a California company, with its principal place of business of 16458 Bolsa Chica St 405, Huntington Beach, California 92649. CMI is in the same business as ADM, namely nuclear molecular imaging technologies and services.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) in that this is a civil action where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7.   Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. Further, the relevant agreements reflect that the parties consented to Illinois law governing any disputes arising under the agreements.

## FACTS COMMON TO ALL COUNTS

8.   On March 21, 2006, ADM hired Walder as ADM's Vice President of Sales. That same day, Walder executed an agreement titled, Vice President of Sales Agreement. ("VPS Agreement"). (A copy of the VPS Agreement is attached hereto as Exhibit A.)

9.   Pursuant to Paragraph 6 of the VPS Agreement, Walder agreed in pertinent part that:

> **VPS'S RELATIONSHIP & CONDUCT OF BUSINESS:** VPS agrees not to represent other companies while in employment with ADM or enter into a competitive business while under employment with ADM.

-2-

    10.    Pursuant to Paragraph 7 of the VPS Agreement, Walder agreed in pertinent part that:

> **TERMINATION:** This agreement shall be enforced until canceled. Either party may cancel at any time, by giving written notice to the other party by email, fax or certified mail. Upon termination of this agreement the following applies;
>
>        \*    \*    \*
>
> a.    Any violation of the terms of this agreement shall be grounds for immediate termination and VPS shall not be eligible for any commissions owed on confirmed or pending contracts.

    11.    Pursuant to Paragraph 8 of the VPS Agreement, Walder agreed in pertinent part that:

> 8.    **NON-DISCLOSURE:** WHEREAS ADM is prepared to disclose certain confidential information regarding the formation, financing, acquisitions, and operations of its accounts concerning diagnostic imaging and other related business in the United States. And, WHEREAS ADM under this agreement wishes to protect this information by insuring that it not be disclosed to anyone without their written permission, and WHEREAS the signatories wish to spell out the exact methods by which they will protect this information. NOW THEREFORE, the signatories mutually covenant and agree as follows:
>
>     a.    Definition of Proprietary Information.
> For purposes of this Agreement, the term "Proprietary Information" shall mean all of the information, data and software furnished by ADM to VPS, whether in oral, written, graphic or machine-readable form, which may include by not be limited to names of other entities interested in acquiring an ownership interest in ADM, financial statements, corporate and stock information , file layouts, marketing strategies, business, product or acquisition plans, current business relationship or strategies and customer lists. "Proprietary Information" shall not include information which: (i) may be publicly disclosed by the party disclosing the information either prior to or subsequent to the receipt of such information by the receiving party; (ii) shall become generally known in the trade through no fault of the receiving party; (iii) may be lawfully disclosed to the receiving party by a third person to this Agreement who has lawfully acquired the Proprietary Information (iv) was independently developed

-3-

1157552.1

    by the receiving party; or (v) is required to be disclosed pursuant to a duly authorized subpoena, court order, or government authority, in which event the receiving party shall provide prompt written notice to the disclosing party prior to such disclosure, so that the disclosing party may seek a protective order or other appropriate remedy. In any event, the receiving party hereby acknowledges and agrees that, if such party shall seek to disclose, divulge, reveal, report, publish, transfer or use, for any purpose whatsoever, any Proprietary Information, such party shall bear the burden of proving that any such information is subject to one of the exceptions identified herein.

  b.  Treatment of Information.
    VPS acknowledges that, in and as a result of employment, and/or discussion with ADM's agents, vendors, officers and employees. VPS shall or may be making use of or acquiring Proprietary Information. As a material inducement to disclose such Proprietary Information, VPS covenants and agrees that it shall not, except with the prior written consent of ADM, at any time directly by itself or indirectly through any agent or employee: (i) copy, modify, disclose, divulge, reveal, report, publish or transfer to any person or entity, for any purpose whatsoever, any Proprietary Information or (ii) use Proprietary Information for any purpose other than in connection with the consummation of the Proposed Transactions in ADM's clinic best interest. Failure to mark any of the Proprietary Information as confidential protected or Proprietary Information shall not affect its status as part of the Proprietary Information under the terms of this Agreement.

  c.  Ownership of Information.
    VPS covenants and agrees that all right, title and interest in any Proprietary Information shall be and shall remain the exclusive property of ADM.

  d.  Injunctive Relief.
    VPS understands and agrees that ADM shall suffer irreparable harm in the event of a breach of any obligations under this Agreement and the monetary damages shall be inadequate to compensate ADM for such breach. Accordingly, VPS agrees that, in the event of a reach or threatened breach of any of the provisions of this Agreement, in addition to and not in limitation of any other rights, remedies or damages available at law or in equity, ADM shall be entitled to a temporary restraining order,

preliminary injunction and permanent injunction in order to prevent or restrain any such breach.

12. Pursuant to Paragraph 9 of the VPS Agreement, Walder agreed in pertinent part that:

> **NOT COMPETE:** For good consideration and as an inducement for ADM to employ VPS, VPS hereby agrees not to directly or indirectly compete with the business of ADM and its successors and assigns during the period of employment and for a period of 1 year following the termination of VPS and notwithstanding the cause or reason for termination. The term "not compete" as used herein shall mean that the VPS shall not own, manage, operate, consult or to be employee in a business substantially similar to or competitive with the present business of ADM or such other business activity in which ADM may substantially engage during the term of employment.

13. Pursuant to Paragraph 10 of the VPS Agreement, Walder agreed in pertinent part that:

> **SETTLEMENT OF DISPUTES:** . . . The prevailing party in any lawsuit shall recover reasonable attorney fees and cost incurred from each other.

14. Pursuant to Paragraph 12 of the VPS Agreement, Walder agreed in pertinent part that:

> **CONSTRUCTION OF AGREEMENT:** This agreement shall be construed according to the laws of the state of Illinois.

15. During the course of Walder's employment at ADM, he became privy to ADM's confidential business, financial and operational information ("Confidential Information").

16. On May 8, 2006, ADM, on Walder's recommendation, hired Kaplan as an ADM Territory Sales Representative. That same day, Kaplan executed an agreement titled, Territory Sales Representative Agreement ("TSR Agreement"). The terms of the TSR Agreement are substantially similar as the terms of Walder's VPS Agreement, with

identical paragraphs 6, 7, 8, 9, 10 and 12.  (A copy of the TSR Agreement is attached hereto as Exhibit B.)

17. On or around October 25, 2006, ADM, upon Walder's recommendation, contracted with Walton's company Molecular Imaging Consults Inc. for radiopharmaceuticals and other services.  (A copy of the ADM and MIC agreement is attached hereto as Exhibit C.)

18. On October 17, 2007, ADM terminated Walder's employment for poor management style and a subpar sales record.  (A copy of ADM termination letter to Walder is attached hereto as Exhibit D.)

19. Despite being terminated in October 2007, Walder continues to refuse to return certain of ADM's property, including a laptop computer, medical software, hardware keys, a presentation projector and multiple ADM sales manuals.

20. After ADM terminated Walder, it learned that in July 2007, Walder solicited an ADM employee on behalf of a new company, CMI.  As part of his solicitation, Walder asked the ADM employee to sign a "Confidentiality and Non-Disclosure Agreement" ("CMI's NDA") and provided the employee with ADM's highly confidential financial information.  (A copy of CMI's NDA and ADM's confidential information Walder disclosed to ADM's employee are attached hereto as Exhibit D.)

21. As CMI's NDA reflects, Walder and Kaplan were CMI's principals while still employed by ADM.  Further, CMI is in the same business as ADM.

22. Upon information and belief, in October 2007, Walder, Kaplan and Walton incorporated CMI in the state of California.

23 On December 3, 2007, while ADM was reviewing the extent of Defendants' illegal conduct, Kaplan tendered his resignation to ADM.

24.　　Walder and Kaplan began plotting to compete against ADM while still employed by ADM. They used ADM's confidential information to solicit ADM's employees and to divert ADM's business to CMI.

<h2 style="text-align:center"><u>COUNT I - BREACH OF CONTRACT - WALDER</u></h2>

25.　　ADM restates and realleges paragraphs 1 through 24 of this Complaint as paragraph 25 of this Count I.

26.　　Walder was provided valuable consideration in the form of employment with ADM and access to ADM's Confidential Information in exchange for the contractual obligation undertaken by Walder in Exhibit A.

27.　　The VPS Agreement attached as Exhibit A is valid and enforceable.

28.　　ADM has performed all of the terms of the Agreement with Walder.

29.　　Walder has breached the VPS Agreement by: 1) operating CMI, an ADM competitor, while still employed by ADM; 2) misappropriating and disclosing ADM's Confidential Information without ADM's written authorization; 3) competing directly against ADM within a year after ADM terminated his employment; and 4) refusing to return ADM's property.

30.　　As a direct and proximate result of Walder's breaches of the VPS Agreement, ADM has sustained, and will continue to sustain, severe and irreparable injury to the value of its Confidential Information, customer goodwill, customer loyalty, and competitive advantage, all of which ADM has expended significant time, money, and effort to secure. Unless Walder is restrained and enjoined from further breaches of the VPS Agreement, ADM will continue to suffer severe and irreparable injury for which it has no adequate remedy at law.

## COUNT II - BREACH OF FIDUCIARY DUTY - WALDER

31. ADM restates and realleges paragraphs 1 through 30 of this Complaint as paragraph 31 of Count II.

32. As an officer of ADM with access to ADM's Confidential Information, Walder owned, and continues to owe, fiduciary duties to ADM including, without limitation, a fiduciary duty to act at all time with the utmost good faith, loyalty and fair dealing to ADM and to avoid self-dealing and acting for his own personal advantage. These fiduciary duties also encompass obligations on Walder not to misappropriate or improperly use ADM's Confidential Information, not to compete unfairly against ADM while employed by ADM, and after his employment, by not competing against ADM and contacting and soliciting ADM's customers and employees within one year of the date of his termination.

33. While in ADM's employ, Walder breached his fiduciary duties by: 1) failing to use his best efforts on behalf of ADM; 2) forming and working on behalf of CMI; 3) contacting and soliciting ADM's employees and customers on behalf of CMI; and 4) refusing to return ADM's property.

34. These breaches of duty of loyalty and fidelity have been willful and malicious and have been carried out with the intent to deprive ADM of its relationships with its employees, customers, its reputation and confidential and proprietary information.

35. As a direct and proximate result of Walder's breaches of his duty of loyalty and fidelity, ADM has sustained substantial damages.

## COUNT III - MISAPPROPRIATION OF ADM'S CONFIDENTIAL AND PROPRIETARY INFORMATION - WALDER

36. ADM restates and realleges paragraphs 1 through 35 of this Complaint

as paragraph 36 of this Count III.

37.  ADM disclosed certain of its Confidential Information to Walder as part of Walder's employment with ADM, including ADM's financial and operational information. Pursuant to paragraph 8 of the VPS Agreement, Walder acknowledged that such information is proprietary.

38.  ADM took reasonable steps to insure said information remained confidential.

39.  Walder disclosed ADM's Confidential Information to at least one ADM employee, without ADM's knowledge and authority.

40.  Walder has misappropriated ADM's Confidential Information, and has used said information to directly compete against ADM.

41.  Walder's misappropriation of ADM's Confidential Information was willful and malicious.

42.  As a direct and proximate result of Walder's misappropriation of ADM's Confidential Information, ADM has sustained substantial damages.

### COUNT IV - CONVERSION - WALDER

43.  ADM restates and realleges paragraphs 1 through 42 of this Complaint as paragraph 43 of this Count IV.

44.  At all time, ADM was, and still is, entitled to the immediate and exclusive possession of its Confidential Information, all physical embodiments thereof, and all of its personal property, as alleged above.

45.  The continued detention by Walder of ADM's Confidential Information and ADM's personal property constitutes conversion.

1157552.1

46. Walder conduct as alleged herein has caused and will continue to cause irreparable injury to ADM and entitles it to permanent injunctive relief.

47. Walder's conduct as set forth and incorporated herein has been willful and malicious.

## COUNT V - BREACH OF CONTRACT - KAPLAN

48. ADM restates and realleges paragraphs 1 through 47 of this Complaint as paragraph 48 of this Count V.

49. Kaplan was provided valuable consideration in the form of employment with ADM and access to ADM's Confidential Information in exchange for the contractual obligation undertaken by Kaplan in Exhibit B.

50. The TSR Agreement attached as Exhibit B is valid and enforceable.

51. ADM has performed all of the terms of the Agreement with Kaplan.

52. Kaplan has breached the TSR Agreement by: 1) operating CMI, an ADM competitor, while still employed by ADM; 2) misappropriating and disclosing ADM's Confidential Information without ADM's written authorization; and 3) competing directly against ADM within a year after he terminated his employment with ADM.

53. As a direct and proximate result of Kaplan's breaches of the TSR Agreement, ADM has sustained, and will continue to sustain, severe and irreparable injury to the value of its confidential information, customer goodwill, customer loyalty, and competitive advantage, all of which ADM has expended significant time, money, and effort to secure.  Unless Kaplan is restrained and enjoined from further breaches of the TSR Agreement, ADM will continue to suffer severe and irreparable injury for which it has no adequate remedy at law.

### COUNT VI - MISAPPROPRIATION OF ADM'S CONFIDENTIAL INFORMATION - KAPLAN

54. ADM restates and realleges paragraphs 1 through 53 of this Complaint as paragraph 54 of this Count VI.

55. ADM disclosed certain of its Confidential Information to Kaplan as part of Kaplan's employment with ADM, including ADM's financial and operational information. Pursuant to paragraph 8 of the TRS Agreement, Kaplan acknowledged that such information is proprietary.

56. ADM took reasonable steps to insure said information remained confidential.

57. Kaplan disclosed ADM's Confidential Information to at least one ADM employee, without ADM's knowledge and authority.

58. Kaplan has misappropriated ADM's Confidential Information, and has used said information to directly compete against ADM.

59. Kaplan's misappropriation of ADM's Confidential Information was willful and malicious.

60. As a direct and proximate result of Kaplan's misappropriation of ADM's Confidential Information, ADM has sustained substantial damages.

### COUNT VII - MISAPPROPRIATION OF ADM'S CONFIDENTIAL INFORMATION - WALTON

61. ADM restates and realleges paragraphs 1 through 60 of this Complaint as paragraph 61 of this Count VII.

62. ADM disclosed certain of its Confidential Information to Walder and Kaplan and as part of their employment with ADM, including ADM's financial and operational information.

63. ADM took reasonable steps to insure said information remained confidential.

64. Walton received ADM's Confidential Information from Walder and Kaplan, without ADM's knowledge and authority.

65. Walton has misappropriated ADM's Confidential Information, and has used said information to directly compete against ADM.

66. Walton's misappropriation of ADM's Confidential Information was willful and malicious.

67. As a direct and proximate result of Walton's misappropriation of ADM's Confidential Information, ADM has sustained substantial damages.

## COUNT VIII - MISAPPROPRIATION OF ADM'S CONFIDENTIAL INFORMATION - CMI

68. ADM restates and realleges paragraphs 1 through 67 of this Complaint as paragraph 68 of this Count VIII.

69. Upon information and belief, in October 2007, Walder, Kaplan and Walton incorporated CMI in California.

70. ADM disclosed certain of its Confidential Information to Walder and Kaplan and as part of their employment with ADM, including ADM's financial and operational information.

71. ADM took reasonable steps to insure said information remained confidential.

72. CMI received ADM's Confidential Information from Walder and Kaplan, without ADM's knowledge and authority.

73. CMI has misappropriated ADM's Confidential Information, and has used said information to directly compete against ADM.

74. CMI's misappropriation of ADM's Confidential Information was willful and malicious.

-12-

1157552.1

75. As a direct and proximate result of CMI's misappropriation of ADM's Confidential Information, ADM has sustained substantial damages.

WHEREFORE, plaintiff American Diagnostic Medicine, Inc. prays that judgment be entered in its favor and against defendant Robert Walder, Paul Kaplan, Brandon Walton and Core Medical Imaging LLC as follows:

A. Permanent injunction against all Defendants and all those acting in concert with them, to enjoin the use of ADM's Confidential Information.

B. Temporary injunction against Walder and Kaplan from directly or indirectly competing with ADM until one year after their separation/termination from ADM.

C. An award of damages in an amount to be provided at trial, plus interest thereon;

D. An award of the costs and expenses, including reasonable attorneys' fees, incurred by ADM in connection with this action;

E. The award of punitive damages; and

F. Such other and further relief as the Court deems just and proper.

AMERICAN DIAGNOSTIC MEDICINE, INC.

By_____
On of its Attorneys

JAMES F. SMITH
JOSHUA A. ALDORT
CHRISTOPHER R. HENSON
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for Plaintiff, AMERICAN DIAGNOSTIC MEDICINE, INC.

-13-

1157552.1