IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN DIAGNOSTIC MEDICINE, INC. | ) ) ) | |
| Plaintiff, | ) ) | No. O7 C 6947 |
| v. | ) ) ) | Judge David H. Coar |
| ROBERT WALDER, PAUL KAPLAN, BRANDON WALTON, and CORE MEDICAL IMAGING LLC | ) ) ) | Magistrate Judge Nolan<br><br>Trial By Jury Demanded |
| Defendant. | ) ) ) | |

**DEFENDANT WALTON AND CORE MEDICAL IMAGING LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

Defendants Brandon Walton ("Walton") and Core Medical Imaging LLC ("CMI") (together the "CMI Defendants"), by their attorneys, respectfully submit this motion to dismiss the complaint of plaintiff American Diagnostic Medicine, Inc. ("ADM") for lack of personal jurisdiction and improper venue and memorandum in opposition to ADM's Motion for a Temporary Restraining Order ("TRO").

## I. Introduction

Without offering any evidence connecting either of the CMI Defendants to Illinois, ADM attempts to bypass firmly established constitutional protections by subjecting the CMI Defendants to lawsuit in a state where they have never purposefully availed themselves nor could reasonably anticipate being forced to defend themselves against ADM's unsubstantiated claims. Furthermore, ADM has offered no support for its contentions that the CMI Defendants possessed confidential information or illegally used or disclosed such alleged secrets. The CMI Defendants respectfully submit that this Court should dismiss ADM's Complaint for lack of personal

jurisdiction and improper venue under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. Alternatively, this Court should deny ADM's Motion for a TRO (and for expedited discovery) for its failure to demonstrate that it deserves such an extraordinary remedy.

## II. Argument

### A. Illinois Lacks Personal Jurisdiction Over the CMI Defendants

As the Seventh Circuit has recognized, "[t]he plaintiff . . . has the burden of demonstrating the existence of personal jurisdiction." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997). Here, the CMI Defendants have no contacts with Illinois, let alone any contacts with this state related to ADM's allegations.

"A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting." *Hyatt Int'l Corp. v. Gerado Coco*, 302 F.3d 707, 713 (7th Cir. 2002). An Illinois court may exercise personal jurisdiction to the extent permitted by the due process clause of the fourteenth amendment to the United States Constitution. *See Commercial Coin Laundry Sys. v. Loon Invs., LLC*, 375 Ill. App. 3d 26, 29 (Ill. App. Ct. 2007) (citing 735 ILCS 5/2-209(c)); *see also Hyatt Int'l*, at 1277. Consequently, to satisfy these Constitutional requirements, ADM must prove that the CMI Defendants have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair place and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316 (1945), *cited by RAR, Inc* 107 F.3d at 1277. More specifically, ADM must demonstrate that the CMI Defendants have "purposefully availed" themselves of the benefits of conducting activities in Illinois such that they could reasonably anticipate being subject to suit in the state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985).

In addition to making this requisite showing of minimum contacts with the forum state, ADM bears the burden of showing that either general or specific jurisdiction over the CMI Defendants in Illinois is appropriate. *See RAR, Inc.*, 107 F.3d at 1277. Illinois only has general jurisdiction over the defendants if they possess "'continuous and systematic general business contacts' with the forum." *Id.* at 1277 (citations omitted).

Here, neither Walton nor CMI has any "continuous and systematic" contacts with Illinois rising to the level necessary for establishing general jurisdiction. As Defendant Walton has verified without any rebuttal in his declaration, he is a citizen and resident of California; he has never resided in Illinois; he owns no property in this state, has never been a citizen of this state, and has never filed an Illinois income tax return; he has not done business in Illinois related to the activity alleged in the Complaint; he has never been employed by ADM; he has never signed a non-disclosure or non-compete agreement with ADM and has never entered into any other agreement with ADM that would restrict his activities (Walton Decl. ¶¶ 1-6, attached as Ex. A.).[1] CMI also has no ties with Illinois: it was formed by Walton on October 29, 2007 as a California limited liability Company; it has no Illinois members and Walton is its sole manager, member, and employee; it has no employees or customers (let alone employees or customers with any Illinois nexus); it has never done business, solicited customers, or performed any marketing or advertising in Illinois; and it does not own any property or have any telephone numbers in Illinois (Walton Decl. ¶¶ 7-12).

This Court also lacks specific jurisdiction over the CMI Defendants. For Illinois to hold specific personal jurisdiction over the CMI Defendants, ADM's claim of misappropriation of confidential information must "arise out of" or "be related to" their minimum contacts with

---

[1]    A copy of Walton's declaration was provided to ADM's counsel in open court on Thursday, December 13, 2007.

Illinois. *See RAR, Inc.*, 107 F.3d at 1277. As discussed, however, they have ***no contacts*** with Illinois. Not once in its complaint does ADM tie the alleged CMI Defendants' activities to this state. The only activity asserted by ADM which could have any remote connection to Illinois is the alleged 2006 contract between ADM and a company, with some unspecified and unalleged connection of some sort to Defendant Walton, called Molecular Imaging Consults Inc. ("MIC") (Cmplt. ¶ 17.). But MIC is a California corporation whose principal place of business is also in California. ADM also neglects to explain how its current misappropriation claim against the CMI Defendants "arises out of" or is "related to" this singular contract with Molecular Imaging Consults, Inc.

Significantly, Defendant Walton has explicitly denied any such contacts in his declaration, affirming that (i) he has never been employed by ADM; (ii) that neither he nor CMI has entered into any contractual relationships with ADM which would restrict their activities, and (iii) that they have never employed Robert Walder, Paul Kaplan, or Michelle Draper. (Walton Decl. ¶¶ 4-6, 10, 13-15). Moreover, neither of the CMI Defendants had knowledge of any of the alleged confidential information before receiving the Complaint, nor have they authorized anyone to use or disclose such information. (Walton Decl. ¶¶ 18-22).

Because the CMI Defendants "have submitted affidavits or other evidence in opposition to the exercise of jurisdiction, [ADM] must go beyond the pleadings ***and submit affirmative evidence supporting the exercise of jurisdiction.***" *Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003) (emphasis added); *Kennelsource, Inc. v. Barking Hound Village, L.L.C.*, 2006 U.S. Dist. LEXIS 65455, at *14 (N.D. Ill. Sept. 5, 2006). ADM has not done so, despite its knowledge of the CMI Defendants' contention that personal jurisdiction is lacking.

Case 1:07-cv-06947    Document 14    Filed 12/18/2007    Page 5 of 12

ADM has failed to establish the requisite minimum contacts necessary to subject the CMI Defendants to a lawsuit in Illinois. To subject the CMI Defendants to a lawsuit in Illinois under these circumstances would undermine the due process protections motivating the jurisdictional requirements. The CMI Defendants have not purposefully availed themselves of the benefits of Illinois, nor could they reasonably anticipate being forced to defend a lawsuit here.

## B.  Venue in Illinois is Improper

### 1.  Venue is Improper for Lack of Personal Jurisdiction

"A court lacking personal jurisdiction is an improper venue to litigate." *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925, 927 (N.D. Ill. 1999). Because personal jurisdiction is lacking over the CMI Defendants, venue is inappropriate in this forum as a matter of law.

### 2.  Venue is Improper Because The Alleged Activity Complained Of Occurred In California

Even assuming *arguendo* that this Court has personal jurisdiction over the CMI Defendants, Illinois does not satisfy the statutorily outlined venue requirements; therefore litigation is improper in this forum.

ADM has asserted venue in Illinois based solely on its allegation that "a substantial part of the events or omissions giving rise to the claims asserted [in the complaint] occurred in this judicial district." (Cmplt. ¶ 7). *See also*, 28 U.S.C. § 1391(a)(2). Accordingly, the only relevant issue for assessing venue in Illinois is whether "a substantial part of the events or omissions giving rise to the claim occurred" here. *See AMN Amro Sage Cor. V. Cohen*, 2003 U.S. Dist. LEXIS 15380, at *14 (N.D. Ill. Sept. 3, 2003). As courts in this District have previously held, venue under "*Section 1391(a)(2)* . . . focuses on the location of the action creating the injury, not the location of the injury itself." *AMN Amro Sage Cor.*, 2003 U.S. Dist. LEXIS 15380, at *14-15.

Given this focus, Illinois is an improper forum for trying this action. As previously shown, the CMI Defendants have never engaged in any conduct in Illinois related to ADM's claims now before this Court. Moreover, none of the alleged conduct of California residents and co-defendants Walder and Kaplan is alleged to have occurred in Illinois. All the conduct complained of is California conduct.[2]

### 3. The Claims Are Subject To Mandatory Arbitration

The CMI Defendants have no contractual privity with ADM. The non-compete agreements alleged to have been breached by Waldon and Kaplan are contracts between ADM and Waldon and Kaplan. Those agreements, however, contain broad mandatory arbitration provisions. In pertinent part, each contract reads:

> The parties agrees that any disputes or questions arising hereunder including the construction or application of this agreement may be settled by arbitration in accordance with the rules of the American Arbitration Association then enforce [sic].

(Cmplt.; Ex. A, ¶ 10; Ex. B, ¶ 9). The use of the term *"may* be settled by arbitration" instead of *"will"* or *"shall* be settled by arbitration" in the arbitration clause does not render arbitration non-mandatory. *Hostmark Investors Ltd. v. GEAC Enter. Solutions, Inc.,* 2002 WL 1732360 (N.D. Ill., July 26, 2002) (holding that agreement that all disputes "may" be referred to arbitration

---

[2]    In addition to the defects in jurisdiction and venue, this action should be dismissed under the doctrine of *forum non conveniens*: "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *See Kamel v. Hill-Rom Co.,* 108 F.3d 799, 802 (7th Cir. 1996). The new forum must be both available (*i.e.,* the parties are within the forum's jurisdiction and are amenable to process) and adequate (*i.e.,* "the parties will not be deprived of all remedies or treated unfairly"). *Id.* at 802-803. Courts must then balance the private and public interests involved to determine which forum is appropriate for housing the litigation. *Id.* at 803. Factors relevant to the private interests of the parties include the access to proof, availability of process for unwilling witnesses, cost of attendance for willing witnesses, "and all other practical problems that make trial of a case easy, efficient and economical." *Id.* at 803. In weighing the relevant public interests, courts consider "administrative difficulties . . . , local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens from an unrelated forum with jury duty." *See id.* Here, California is the more appropriate forum.

triggers mandatory arbitration).  Given this language and applicable case law, proper venue for the action against Walder and Kaplan is before an arbitrator and not before this Court. *Metropolitan Life Ins. v. O'Malley*, 392 F. Supp. 2d 1042 (N.D. Ill. 2005) (dismissing trade secrets and non-compete case for improper venue where restrictive covenant at issue contained an arbitration provision).

## C.  ADM Has Failed to Make the Clear Showing of Need Necessary to Warrant a TRO

As this District has recognized, "[a] TRO is an 'extraordinary and drastic' remedy that should only be granted *upon a clear showing of need*." *David White Instruments, L.L.C. v. TLZ, Inc.*, 2002 U.S. Dist. LESIX 23410, at *4-5 (N.D. Ill. Nov. 25, 2002) (referencing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) and *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999)) (emphasis added).  To prove it is entitled to such exceptional relief, ADM must demonstrate that (1) it has a reasonable likelihood of success on the merits; (2) it has no adequate remedy at law; (3) it will suffer irreparable harm without injunctive relief; (4) the irreparable harm it faces will outweigh the harm to CMI and Walton if the injunction is granted; and (5) the injunctive relief will not disserve the public interest. *See Ecologix, Inc. v. Fansteel, Inc.*, 676 F. Supp. 1374, 1378 (N.D. Ill. 1988).

### 1.  ADM Is Unlikely to Succeed on the Merits

ADM is unlikely to succeed on the merits of its claims to enforce the non-compete and non-disclosure employment covenants against Defendants Walder and Kaplan or its misappropriation of trade secrets claims based on the Illinois Trade Secrets Act 765 ILCS 1065/2(d) against all defendants.

First, under Illinois law—which ADM continues to contend governs this action[3]—"non-competition clauses are disfavored." *See Advent Elecs., Inc. v. Buckman*, 112 F.3d 267 (7th Cir. 1997).  In light of the general disregard for such provisions, courts only enforce them if they are "reasonably necessary to protect a legitimate business interest or to prevent improper and unfair competition." *Id.* (citations omitted).  Specifically, this District has declined to "enjoin a former employee" unless "there is a threat that they will disclose secret information to a competitor." *Slijepcevich v. Caremark Inc.*, 1996 U.S. Dist. LEXIS 110, at *4 (N.D. Ill. Jan. 4, 1996). Consequently, "the existence of classified information or a trade secret" is an "essential element" of ADM's TRO claim. *Slijepcevich*, 1996 U.S. Dist. LEXIS 110, at *4.  Here, ADM does not even attempt to describe the trade secrets or confidential information to which it contends defendants Waldon or Kaplan allegedly had access to and needs protection by a TRO.

With respect to the trade secrets claim against the CMI Defendants, ADM likewise fails to allege, let alone offer any proof, that the CMI defendants have misappropriated any trade secrets. Under this Illinois Trade Secret Act, ADM must establish that the information at issue was (1) secret (2) misappropriated, and (3) used in the defendant's business.  *See Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992); *David White Instruments, L.L.C. v. TLZ, Inc.*, 2003 U.S. Dist. LEXIS 331, at *5-6 (N.D. Ill. Jan 6, 2003). Moreover, as the Seventh Circuit has emphasized, "[t]he plaintiff must show concrete secrets." *Composite Marine Propellers, Inc.*, 962 F.2d at 1266.  ADM has failed to allege which trade secrets it is hoping to protect with this TRO.  Significantly, ADM has made no allegations nor does it offer any support for its contentions that the CMI Defendants have illegally used or disclosed any ADM trade secrets.  Nor does it allege that the threat of such disclosure is

---

[3]    The CMI Defendants contend that as citizens of California, the law of that state should govern.  Without waiving that argument, for purposes of this Motion, the CMI Defendants will assume Illinois law applies.

imminent.   As ADM itself readily admits, *"It is not clear which Confidential Information Defendants possess* and the nefarious ways in which Defendants plan on using it." (Motion, at 9) (emphasis added).

Notably, the Defendants have provided express evidence to the contrary, asserting that they had no knowledge of ADM alleged trade secrets before the filing of this suit and they have not used or disclosed such information.   (Walton Decl. ¶¶ 18-22).   Consequently, ADM has failed to show the CMI Defendants engaged in any unlawful activity, and ADM's request for a TRO is therefore baseless.[4]

### 2.  An Adequate Remedy at Law Is Available

ADM has failed to demonstrate that monetary damages would be inadequate to compensate for any losses incurred in the absence of an injunction.   As this District has recognized in denying a TRO based on either enforcement of a covenant not to compete or protection of trade secrets theory, money damages *are adequate* to compensate a plaintiff for "the loss of any clients that may result, even if [ADM] is not able to precisely calculate its losses." *See Fisher Invs., Inc. v. Carlson,* 2004 U.S. Dist. LEXIS 22060, at *9-10 (N.D. Ill. Nov. 1, 2004).

### 3.  ADM Will Not Be Irreparably Harmed by Denial of Its TRO

ADM has voluntarily placed this allegedly confidential information into the public domain by attaching it to its Complaint.   In light of this willing disclosure, ADM faces no irreparable harm by a denial of its TRO motion.  Furthermore, the CMI Defendants have asserted

---

[4]   ADM's motion for a TRO is deficient for another reason as well:  by attaching the information at issue to its Complaint (*see* Ex. [ ] to the Complaint), ADM freely committed it to the public domain.  In fact, "under Illinois law, unrestricted disclosure of such information to at least *one* third party on a completely non-confidential basis removes any indicia of secrecy necessary for proprietary information to be considered a trade secret and defeats any claim founded upon misappropriation of such information." *Ecolgix, Inc. v. Fanstell, Inc.,* 676 F. Supp. 1374, 1383 n.5 (N.D. Ill. 1988).

that they have never received such confidential information, other than that information disclosed via the Complaint, and have never authorized anyone to use or disclose it in anyway. *See Fisher Invs.*, 2004 U.S. Dist. LEXIS 22060, at *9 (finding no irreparable harm when plaintiff failed to show that the defendant "had access to clients' confidential financial information [or] that he [was] disclosing it").

## 4. The Balance of the Hardships Weighs Against TRO

Injunctive relief is appropriate *only* if a balancing of the relative hardships favors the movant. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994); *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619, n. 14 (7th Cir. 1993 A denial of a TRO would impose no burden on ADM since it has already disclosed to the public the information it currently seeks to keep confidential. The CMI Defendants, in contrast, would face tangible hardships if this Court were to enjoin their activities, impeding them from engaging in the commercial business pursuits in which they have already invested time and money. ADM's unsubstantiated allegations do not warrant such an inequitable result.

## 5. Granting ADM's TRO Will Disserve the Public Interest

Finally, granting ADM's TRO will harm the public by stifling the competitive commercial markets which stand as the foundation of this nation's economy. *See August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 619 (7th Cir. 1995) ("Even substantial deference to the district court's balancing of the equities cannot save an injunction when the judge overstates the private injury and disregards the public interest in competition.").

## III. Conclusion

For the forgoing reasons, the CMI Defendants respectfully request that this Court dismiss the Plaintiff's Complaint for lack of personal jurisdiction, or, in the alternative, improper venue.

Additionally, because ADM has failed to establish a clear need for the extraordinary remedy of a temporary restraining order, the CMI Defendant request that this Court deny its motion for a TRO and its companion motion for expedited discovery.

Dated: December 18, 2007                    Respectfully submitted,


                                            _____/s/Robert R. Brown_____
                                            Robert R. Brown
                                            Michael J. Abernathy
                                            Attorneys for Defendants
                                            BRANDON WALTON, and CORE MEDICAL
                                            IMAGING LLC

## CERTIFICATE OF SERVICE

I, Robert R. Brown, an attorney, hereby certify that I electronically filed Defendant Walton and Core Medical Imaging LLC's Motion To Dismiss For Lack Of Personal Jurisdiction And Improper Venue And Memorandum In Opposition To Plaintiff's Motion For A Temporary Restraining Order with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

James F. Smith
Joshua A. Aldort
Christopher R. Henson
Clausen Miller P.C.
10 South LaSalle Street
Chicago, IL  60603

Ira I. Silverstein
111 West Washington
Suite 1760
Chicago, IL  60602

on this 18th day of December 2007.

_____ /s/Robert R. Brown_____
Robert R. Brown